IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BOWEN, | ) | Case No. 5:23-cv-407 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| WARDEN TOM WATSON, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner Robert Bowen, an Ohio prisoner serving a ten-year aggregate prison sentence

for the rape and sexual battery of his adopted daughter, seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  ECF Doc. 1.  Bowen asserts five grounds for relief:

> **Ground One**: Bowen's Fifth Amendment right to due process was violated because the state failed to produce sufficient evidence for his convictions.  ECF Doc. 1 at 7.

> **Ground Two**: Bowen's Fourteenth Amendment right to due process was violated because his convictions were not supported by the manifest weight of evidence. ECF Doc. 1 at 10.

> **Ground Three**: Bowen's Fifth Amendment right to due process was violated when the trial court imposed a punitive discovery sanction.  ECF Doc. 1 at 15.

> **Ground Four:** Bowen's Fifth Amendment right to due process was violated when the trial court allowed discussion of a Computerized Voice Stress Analyzer ("CVSA") test during the trial.  ECF Doc. 1 at 17.

> **Ground Five:** Bowen's Sixth Amendment right to a fair trial was violated when the trial court introduced an involuntary confession.  ECF Doc. 1 at 20.

Respondent, Warden Tom Watson, filed a return of writ, arguing that Bowen's habeas petition should be dismissed because his claims were procedurally defaulted, noncognizable, and/or meritless.  ECF Doc. 6.  Bowen filed a traverse.  ECF Doc. 8.

I recommend that Bowen's claim be resolved in the following manner: (i) Ground One be DENIED on the merits; (ii) Ground Two be DISMISSED as noncognizable; (iii) Ground Three be DENIED on the merits; (iv) Ground Four be DISMISSED as procedurally defaulted and/or noncognizable; and (v) Ground Five be DISMISSED as procedurally defaulted.  I further recommend that Bowen not be granted a certificate of appealability.

## I.     State Court History

### A.     Trial Court Proceedings

On June 4, 2018, a Holmes County, Ohio grand jury issued an indictment that charged Bowen with one count of rape in violation of Ohio Rev. Code §§ 2907.02(A)(2) and (B) (Count 1), and four counts of sexual battery in violation of Ohio Rev. Code §§ 2907.03(A)(5) and (B) (Counts 2-5).  ECF Doc. 6-1 at 6-8.

The following facts were subsequently established by the trial evidence, as described by the Ohio Court of Appeals:

> {¶4} Mary Bowen testified she and [Petitioner] were married on July 4, 2011. Although they were still legally married at the time of the trial, [Mary] indicated they had been separated for over a year.  [Mary] and [Petitioner] became foster parents to the Child in September, 2012, and the child's sister in November, 2012. [Mary] and [Petitioner] adopted both children on March 24, 2014.  [Mary] conceded the Child and her sister had behavioral problems.

> {¶5} [Mary] explained the Child and her sister were homeschooled after the Child's sister called in a bomb threat to her elementary school.  [Mary] worked six days a week, usually from 7:30 a.m. to 5:30 or 6:00 p.m., but worked close enough to their home to check on the children during her lunch hour.

> {¶6} In June, 2016, when the Child was 15 years old, she disclosed to [Mary] [Petitioner] had touched her inappropriately.  [Mary] explained the Child had snuck out of the house around midnight one evening to meet a 19 or 20 year old young

2

man, and did not return until 3:30 a.m.  [Mary] confronted the Child, telling her the young man would get in trouble if she ([Mary]) called the police.  The Child responded [Mary] should call the police about [Petitioner] as he had touched her.  [Mary] questioned [Petitioner], who denied any wrongdoing.  The Child later told [Mary] she was lying.  The Child returned to public school in September, 2017.

{¶7}  In January, 2018, after the Child's sister set a number of fires, Children's Services became involved with the family.  The Child's sister told Children's Services [Petitioner] had been abusing her and the Child.  When Children's Services questioned the Child regarding her sister's disclosure, the Child denied any abuse by [Petitioner].

{¶8}  [Mary] recalled the Child attended her prom the weekend of April 21, 2018.  When the Child was at school the following Monday, the Child disclosed [Petitioner] had been abusing her.  [Mary] was instructed to bring the Child to Children's Services and thereafter learned about the Child's disclosure.  [Mary] was contacted by Victim's Assistance and was informed [Petitioner] had confessed.

{¶9}  The Child testified, when she was 15 years old, [Petitioner] entered her bedroom and touched her breasts over her clothing.  [Petitioner] instructed her not to tell her mother.  The Child recalled it was the summer and she was sick.  The Child detailed another incident which occurred when she was still 15.  She noted she was being homeschooled at the time and needed help with algebra.  The Child proceeded to [Petitioner's] bedroom which was located in the basement of the home.  [Petitioner] began to help her with her math, but then pushed her onto his bed and removed her clothes.  [Petitioner] vaginally penetrated her.  [Petitioner] told the Child not to tell anyone or he would not be her father anymore.  [Petitioner] also threatened to do the same to the Child's sister if the Child told anyone.  After the incident, the Child hurriedly put on her clothes and returned upstairs to finish her schoolwork.  The Child testified [Petitioner] had sexual intercourse with her at least five times.  Shortly before the Child turned 16, she disclosed the abuse to [Mary].  The Child admitted she later told [Mary] she had made "the whole thing up".  Tr. at 128.

{¶10}  The Child testified, in January, 2018, she spoke with a detective and a social worker after the Child's sister had set a few fires in their home.  The detective and the social worker questioned the Child about [Petitioner], but she did not disclose the abuse at that time.  The Child disclosed the abuse to her boyfriend and a friend the night of her prom, April 21, 2018.  The following Monday, the Child met with Ms. Gilson, the school liaison, and told the woman what [Petitioner] had done to her.  Ms. Gilson informed the Child she was required to contact the authorities.  When the Child returned home from school, [Mary] met her at the bus and told her Children's Services needed to speak with her.  The Child met with Jacqueline Shaw and disclosed the abuse.

{¶11}  Sergeant James Henry, a detective with the Holmes County Sheriff's Office, testified he interviewed [Petitioner] on May 10, 2018.  The interview was

recorded and the recording was played for the jury.  During the interview, [Petitioner] confessed to having a sexual relationship with the Child.  Det. Henry acknowledged the Child, during an interview on January 9, 2018, initially denied any sexual contact with [Petitioner].  The detective explained it is not unusual for the victim of sexual abuse to initially not disclose the abuse occurred, but subsequently, after counseling, is able to do so.

{¶12} [Petitioner] testified on his own behalf.  He explained he was contacted by Det. Lay of the Bowensburg Police Department, who requested [Petitioner] come to the station to speak with him.  [Petitioner] phoned Det. Lay and the two spoke on the telephone for an hour.  During the conversation, the detective set up a computerized voice stress analyzer ("CVSA").  Several weeks later, in February, 2018, [Petitioner] was interviewed by Det. Lay.  [Petitioner] and the detective spoke for two hours, including the time conducting the CVSA.  [Petitioner] did not hear from the detective again.

{¶13} On April 24, 2018, the Tuesday following the Child's prom, [Petitioner] received a message he needed to call Job and Family Services.  He was instructed to contact Det. Henry.  When [Petitioner] initially sat down with Det. Henry, he assumed he was being questioned about the situation with the Child's sister.  [Petitioner] was shocked by the allegations.  [Petitioner] denied confessing to Det. Henry and denied abusing the Child.

ECF Doc. 6-1 at 87-90.

The jury found Bowen guilty on all five counts of the indictment.  *Id.* at 12.  On March 21, 2019, the trial court sentenced Bowen to an aggregate ten-year prison sentence, with a mandatory six-year term on Count 1 and one-year terms on each of Counts 2-5, all to be served consecutively.  *Id.* at 14-20.

### B.    Direct Appeal

On April 17, 2019, Bowen appealed to the Ohio Court of Appeals.  *Id.* at 26.  Bowen asserted four assignments of error that all claimed federal due process violations: (i) Ohio failed to produce sufficient evidence to convict Bowen of the counts in the indictment; (ii) the convictions were not supported by the manifest weight of evidence; (iii) the trial court abused its discretion by imposing a punitive discovery sanction when it declined to allow the use of the

victim's text messages on cross-examination; and (iv) the trial court erred by allowing discussion of a CVSA test.  *Id.* at 31, 36-50.  The state filed an appellee brief.  *Id.* at 62-75.

On January 6, 2020, the Ohio Court of Appeals overruled Bowen's assignments of error and affirmed his convictions.  *Id.* at 85-102; *State v. Bowen*, 2020-Ohio-24 (Ohio Ct. App. 2020). In overruling Bowen's first assignment of error, the court stated:

> {¶18}  When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 47.  Sufficiency is a test of adequacy.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law.  *State v. Perkins*, 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541 .

> {¶19}  [Petitioner] was convicted of one count of rape, in violation of R.C. 2907.02(A)(2) and (B), which provides:

> (A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
> (B) Whoever violates this section is guilty of rape, a felony of the first degree. * * *

> {¶20}  [Petitioner] also was convicted of four counts of sexual battery, in violation of RC. 2907.03(A)(5), which provides:

> (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * *
> (5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

> {¶21}  With respect to the rape charge, [Petitioner] submits the evidence was insufficient as [Petitioner] adamantly denied the incident giving rise to the rape charge and there was no corroborating evidence.  With respect to the sexual battery counts, [Petitioner] explains the Child testified there was only one incident involving force, which was the basis for the rape charge.

> {¶22}  The Ohio Supreme Court in *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304 (1988), a case involving the rape of a four year old by her father, addressed the element of force in a rape count.  The Ohio Supreme Court explained:

Force need not be overt and physically brutal, but can be subtle and psychological.  As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established. *State v. Martin* (1946), 77 Ohio App. 553, 68 N.E.2d 807 [33 0.0. 364]; *State v. Wolfenberger* (1958), 106 Ohio App. 322, 154 N.E.2d 774 [7 O.O.2d 73].  In the within case, we are confronted with a child being told to do something by an important figure of authority, and commanded not to tell anyone about it.  In such a case, we find nothing unreasonable about a finding that the child's will was overcome.  Consequently, the forcible element of rape was properly established.  *State v. Fowler* (1985), 27 Ohio App.3d 149, 154, 27 OBR 182,187,500 N.E.2d 390,395.  *Id.* at 58-59.

{¶23} The evidence at trial established [Petitioner] was the Child's adoptive father.  The Child testified about an incident which occurred when she was 15 years old.  She was homeschooled at the time and needed help with algebra.  The Child sought [Petitioner's] assistance.  She proceeded to [Petitioner's] bedroom. [Petitioner] began to help her with her math, but then pushed her onto his bed and removed her clothes.  [Petitioner] vaginally penetrated her.  [Petitioner] told the Child not to tell anyone or he would not be her father anymore.  [Petitioner] also threatened to do the same to the Child's sister if the Child told anyone.  The Child stated [Petitioner] had sexual intercourse with her at least five times.

{¶24} We find coercion is inherent in parental authority when a father sexually abuses his child.  Further, we find [Petitioner's] threat of assaulting the Child's sister was a subtle and psychological force.  The Child's will was overcome by the fear and duress of harm to her sibling.  Accordingly, we find the forcible element of rape was properly established.  We also find the element of sexual battery were established.  Bowen testified she and [Petitioner] were the Child's adoptive parents. The Child detailed several incidents during which [Petitioner] engaged in sexual conduct with her.

{¶25} Based upon the foregoing, we find [Petitioner's] convictions were based upon sufficient evidence.

*Id.* at 92-95.

In overruling Bowen's second assignment of error, the court stated:

{¶30} [Petitioner] asserts the Child was not a credible witness for several reasons.  First, [Petitioner] refers to the Child's initial disclosure of the abuse to [Mary] Bowen in 2016.  When [Mary] confronted the Child after she was caught sneaking out of the house to meet her boyfriend, the Child declared [Petitioner] had abused her. The Child later recanted her allegation, explaining she had lied to get herself out of trouble.  Next, [Petitioner] points to the Child's testimony she never told her sister about the abuse.  [Petitioner] submits this statement was not credible as the two sisters were extremely close; therefore, the Child would have told her

6

sister about the abuse.  [Petitioner] adds the Child acknowledged she was angry about the break-up of [Mary] Bowen and [Petitioner's] marriage, explaining her anger translated to revenge at [Petitioner].  Finally, [Petitioner] notes the Child waited until 2018, to disclose the abuse to anyone.

**{¶31}** Det. James Henry testified it is not unusual for a victim to initially deny abuse has occurred.  In fact, when the Child was questioned during her cross-examination about her January, 2018 denial, she commented, "Why would I want to tell four (4) strangers what I was going through?"  Tr. at 148.  The Child finally acknowledged the abuse after she had "worked up enough courage."  Tr. at 149.

**{¶32}** In addition, the videotape of [Petitioner's] interview with Det. Henry was played for the jury.  During the interview, [Petitioner] confessed to the crimes. [Petitioner] did not, however, concede he threatened the Child not to tell anyone or forced her to have intercourse with him on the first occasion.

**{¶33}** The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility.  Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true.  *State* v. *McGregor,* 5th Dist. Ashland No. 15-COA-023, 2016-Ohio-3082, 2016 WL 294299.  The jury clearly believed the testimony of the Child and the state's other witnesses.

**{¶34}** Upon review of the entire record, including reading the entire transcript, we find [Petitioner's] convictions were not against the manifest weight of the evidence.

*Id.* at 96-97.

In overruling Bowen's third assignment of error, the court stated:

{¶37} "Although a criminal defendant has the right to present witness testimony on his behalf, a trial court may 'exclude such evidence when the orderly administration of justice is threatened by the accused's failure to promptly disclose witnesses'."  *State v. Calise*, 9th Dist. No. 26027, 2012-Ohio-4797, ¶ 30, quoting *State v. Moon*, 74 Ohi App.3d 162, 169, 598 N.E.2d 726 (9th Dist. 1991).  "The rules of discovery, and more specifically Crim. R. 16, imbue trial courts with the discretion to exclude testimony that is not disclosed in a timely manner in order to prevent surprise and ensure a fair trial."  *Calise* at ¶ 30, citing *State v. Barrios*, 9th Dist. No. 06CA009065, 2007-Ohio-7025, ¶ 18.  "Exclusion is a permissible sanction 'as long as it would not completely deny the defendant his constitutional right to present a defense'."  *Barrios* at ¶ 18, quoting *State v. Sinkfield*, 2d Dist. No. 18663, 2001 WL 1517314, *8 (Nov. 30, 2001).  Because a trial court's decision to exclude testimony is a discretionary one, we review a court's decision to exclude evidence under an abuse of discretion standard of review.  *Barrios* at ¶ 18.  An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary,

or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶38} In *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), the Ohio Supreme Court stated, "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery."  *Id.* at paragraph two of the syllabus.  The High Court noted, "[t]he philosophy of the Criminal Rules is to remove the element of gamesmanship from a trial."  *Id.* at *3.  (Citation omitted.)  The *Papadelis* Court explained, "[t]he purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party.  The overall purpose is to produce a fair trial."  *Id.*

{¶39} In *Papadelis*, the Supreme Court also sets forth a list of factors to be considered by the trial court prior to issuing a sanction.  Those factors included: "the extent to which the prosecution will be surprised or prejudiced by the witness' testimony, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions."  *Id.* at *5.

{¶40} At trial, during the cross-examination of the Child, defense counsel sought to introduce text messages, which were either to or from the Child's phone, for the purpose of refreshing her recollection.  The state objected to the introduction of the text message, indicating it had not received such in discovery.  Defense counsel explained she just recently obtained the text messages and did not know how the Child would testify.  The trial court would not allow defense counsel to use the text messages for any purpose.  Defense counsel noted her objection for the record.

{¶41} Assuming, arguendo, the trial court erred in excluding the text messages, we find any error to be harmless.  [Petitioner] failed to make a proffer of the nature of text messages.  Without such a proffer, this Court cannot find [Petitioner] was prejudiced by the exclusion of the evidence.

*Id.* at 97-99.

In overruling Bowen's fourth assignment of error, the court conducted a plain error

analysis and stated:

{¶45} During her cross-examination of Det. Henry, defense counsel asked the detective if he had offered [Petitioner] an opportunity to take a CVSA or lie detector test to "confirm his confession." Tr. at 206.  Det. Henry responded he would have offered the test if [Petitioner] had not confessed.  The detective would not concede the test would be a tool to further verify or support [Petitioner's] confession.  Det.

Henry explained he does "believe in them" and will only offer the test as a chance to conduct a second interview.

{¶46}  We find [Petitioner] opened the door to this line of questioning and [Petitioner] has failed to establish the alleged plain error affected the outcome of the trial.  Det. Henry stated he did not believe in CVSA's or polygraphs, and utilized them only as a means to a second interview with an accused.  The detective's testimony neither incriminated nor cleared [Petitioner].  Accordingly, we find no error, plain or otherwise.

*Id.* at 101.

On February 19, 2020, Bowen appealed to the Ohio Supreme Court.  *Id.* at 104-05.

Bowen's memorandum in support of jurisdiction asserted four proposition of law – which

mirrored the same four assignments of error asserted before the Ohio Court of Appeals: (i) Ohio

failed to produce sufficient evidence to convict Bowen of the counts in the indictment; (ii) the

convictions were not supported by the manifest weight of evidence; (iii) the trial court abused its

discretion by imposing a punitive discovery sanction; and (iv) the trial court erred by allowing

discussion of a CVSA test.  *Id.* at 112-23.  The state filed a memorandum in opposition.  *Id.* at

126-38.

On May 12, 2020, the Ohio Supreme Court declined to accept jurisdiction of Bowen's

appeal.  *Id.* at 149.

### C.    Post-conviction Petitions

On July 29, 2020, Bowen filed a motion to set aside or vacate a conviction pursuant to

R.C. 2953.21, seeking a vacatur of his conviction.  *Id.* at 151-61.  In this petition, Bowen raised

two constitutional issues: (i) "Petitioner was denied his right to a fair trial when the trial court

introduced an involuntary confession taken by the police in violation of the Fifth Amendment,

Sixth Amendment and made applicable to the state of Ohio by the Fourteenth Amendment"; and

(ii) "Petitioner was denied due process guaranteed by the federal constitution and made

applicable to the states by the Fourteenth Amendment when the trial court judge showed actual

bias towards him." *Id.* at 155-61.  In support of his first claim, Bowen argued that his confession was involuntary because: (i) the interviewing detective was coercive and exerted undue influence on Bowen; (ii) Bowen was susceptible to providing a false confession because he was bullied as a child, he had low self-esteem and high anxiety, and he was suffering from extreme depression during the interview.  *Id.* at 155-58.  In support of his second claim, Bowen argued that the trial judge was not impartial, stating: "It is clear that the judge in this matter would not even consider a motion to suppress when it involved this detective.  This shows favoritism towards the police department and this detective."  *Id.* at 158-60.  Bowen attached two affidavits in support of his second claim, with: (i) his mother attesting to his depression and abuse as a child; and (ii) his trial counsel attesting to the trial judge making comments in chambers that were favorable towards the interviewing detective and made it evident that a motion to suppress would be fruitless.  *Id.* at 163-68.

The State filed a memorandum in opposition.  *Id.* at 224-28.  The State also provided an affidavit from the prosecuting attorney, wherein he attested that it was his recollection that the defense withdrew its motion to suppress because of a plea offer, and "[a]t no time did the Judge ever state he would not hear the Defendant's [motion to suppress].  At no time did the Judge say his mind was already made up."  *Id.* at 241-42.

On February 24, 2021, the trial court denied Bowen's petition for post-conviction relief. *Id.* at 244-45.  In denying the petition, the court stated:

> The defendant was able to argue to the jury his circumstances of his statement, he withdrew his Motion to Suppress and he could have the raised the issue on direct appeal.
> The defendant made his arguments to the jury and they unanimously rejected them. Issues that could have been raised on direct appeal are bound by *res judicata*.  Also, the record made at the trial that the defendant withdrew his Motion to Suppress belies his arguments of coercion or bias.

*Id.* at 245.

10

On March 22, 2021, Bowen appealed the trial court's denial of his post-conviction petition to the Ohio Court of Appeals.  *Id.* at 247.  Bowen asserted two assignments of error: (i) the trial court erred in denying his petition for post-conviction relief; and (ii) the trial court abused its discretion by not holding an evidentiary hearing.  *Id.* at 253, 257-63.  On November 4, 2021, the Ohio Court of Appeals overruled Bowen's assignments of error and affirmed the judgment of the trial court.  *Id.* at 287-97; *State v. Bowen*, 2021-Ohio-3969 (Ohio Ct. App. 2021).  The court of appeals affirmed the trial court's judgment on the grounds that Bowen did not raise the two issues in his post-conviction petition on direct appeal and he should have filed an affidavit of disqualification during trial proceedings if he believed the trial judge was biased – the statutory remedy to remove biased judges in Ohio courts.  *Id.* at 295-96.

On December 15, 2021, Bowen appealed the decision to the Ohio Supreme Court.  *Id.* at 299-300.  Bowen raised a single assignment of error: "the trial court and the appellate court erred in denying federal constitutional claims related to appellant's Fifth, Sixth and Fourteenth Amendment rights contained in the federal constitution."  *Id.* at 308.

On March 23, 2022, the Ohio Supreme Court declined to accept jurisdiction of Bowen's appeal.  *Id.* at 314.

## II.  Federal Habeas Petition

Bowen filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this court on March 1, 2023.  ECF Doc. 1.  Bowen alleged five grounds for relief:

> **GROUND ONE:** The State of Ohio failed to produce sufficient evidence to convict [Bowen] of the counts in the indictment in violation of his right to due process under the Fifth Amendment made applicable to all state criminal prosecutions by the Fourteenth Amendment to the federal constitution.
>
> **GROUND TWO:** The convictions in this matter are not supported by the manifest weight of the evidence violative of [Bowen's] rights to due process guaranteed by the Fourteenth Amendment to the federal constitution.

11

**GROUND THREE:** The trial court abused its discretion in imposing a punitive discovery sanction that was not the least restrictive and was violative of [Bowen's] due process rights under the Fifth Amendment made applicable to the state prosecutions by the Fourteenth Amendment to the federal constitution.

**GROUND FOUR:** The trial court committed error by allowing discussion of a CVSA test and violated [Bowen's] right to due process guaranteed to him under the Fifth Amendment to the federal constitution made applicable to all state criminal prosecutions by the Fourteenth Amendment.

**GROUND FIVE:** [Bowen] was denied his right to a fair trial when the trial court introduced an involuntary confession taken by the police in violation of the Fifth Amendment, Sixth Amendment and made applicable to the State of Ohio by the Fourteenth Amendment.

*Id.* at 7-23.

## III.    Law and Analysis

### A.    Ground One – Sufficiency of the Evidence

For his Ground One claim, Bowen contends that the Ohio Court of Appeals unreasonably determined that the State produced sufficient evidence to prove each and every element of the charges in the indictment, because Bowen denied the incident alleged by the victim and there was no evidence (physical or forensic) to corroborate the incident.  ECF Doc. 1 at 7-10.

Warden Watson responds that, even though the State did not produce physical or forensic evidence corroborating the victim's account, the Ohio Court of Appeals' determination that there was sufficient evidence to support the convictions was not an unreasonable application of the relevant *Jackson*[1] standard or an unreasonable determination of the facts because: (i) a rational juror could have found the elements of rape and sexual battery proven beyond a reasonable doubt, given the victim's account and Bowen's confession; (ii) the Sixth Circuit has held that testimony of the victim, by itself and without corroboration, is constitutionally sufficient to

_____
[1] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

12

support a conviction; and (iii) this court must defer to the jury's implied credibility determination of the victim's account and Bowen's admission of abuse.  ECF Doc. 6 at 17-19.

In his traverse, Bowen argues that this court must find that there was insufficient evidence to support the conviction because: (i) in the so-called confession, Bowen did not confess to the crimes and there was no corroboration or follow up by the interviewing detective even though no specific details were provided; and (ii) the victim had a history of lying about being sexually abused by Bowen.  ECF Doc. 8 at 15-18.

### 1.    AEDPA Deference

Because the state court adjudicated Bowen's sufficiency-of-the-evidence claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a federal court to grant relief only if that decision: (i) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (ii) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d).  "Unreasonable" doesn't simply mean that the state court got it wrong. *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022).  Only if no "fairminded jurist" could agree with the state court may we grant relief.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  The petitioner must show that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 103.

### 2.    Standard of Review for Sufficiency-of-the-Evidence Claims

"The Fourteenth Amendment's Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt."  *Thomas v. Stephenson*, 898 F.3d 693, 702 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  When a criminal defendant alleges that the evidence adduced at trial was insufficient to support his conviction, the

13

court must determine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. And in applying this standard, courts are mindful that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

On habeas review, this inquiry is further filtered through the deferential standard of 28 U.S.C. § 2254(d). *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (en banc) (explaining that a state court's decision in a federal habeas sufficiency-of-the-evidence challenge receives "double deference" – first, to the jury's verdict, and second, to the state court's consideration of the verdict); *see also* 28 U.S.C. § 2254(d); *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473. Thus, a federal habeas court reviewing a sufficiency-of-the-evidence claim must determine whether the state appellate court reasonably concluded that the trial evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The sufficiency of the evidence determination is based on all the evidence, even evidence erroneously admitted. *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).

### 3.    Merits

The state appellate court found no merit to Bowen's sufficiency-of-the evidence claim. Viewing the evidence in a light most favorable to the prosecution, the court found that the following evidence was sufficient to support Bowen's convictions:

> {¶23} The evidence at trial established [Petitioner] was the Child's adoptive father. The Child testified about an incident which occurred when she was 15 years old. She was homeschooled at the time and needed help with algebra. The Child

14

sought [Petitioner's] assistance.   She proceeded to [Petitioner's] bedroom. [Petitioner] began to help her with her math, but then pushed her onto her bed and removed her clothes.  [Petitioner] vaginally penetrated her.  [Petitioner] told the Child not to tell anyone or he would not be her father anymore.  [Petitioner] also threatened to do the same to the Child's sister if the Child told anyone.  The Child stated [Petitioner] had sexual intercourse with her at least five times.

{¶24} We find coercion is inherent in parental authority when a father sexually abuses his child.  Further, we find [Petitioner's] threat of assaulting the Child's sister was a subtle and psychological force.  The Child's will was overcome by the fear and duress of harm to her sibling.  Accordingly, we find the forcible element of rape was properly established.  We also find the element of sexual battery were established.  Bowen testified she and [Petitioner] were the Child's adoptive parents. The Child detailed several incidents during which [Petitioner] engaged in sexual conduct with her.

*Id.* at 92-95.

The Ohio Court of Appeals' denial of Bowen's sufficiency-of-the evidence claim was neither contrary to, nor an unreasonable application of, *Jackson*.  28 U.S.C. § 2254(d)(1). Although the court of appeals cited state law to articulate the standard for evaluating sufficiency-of-the-evidence claims, the standard that was applied was consistent with *Jackson*.  *Compare* 443 U.S. at 319, *with* ECF Doc. 6-1 at 92 (citing *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285 (Ohio 2005)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court does not need to cite the applicable federal decision but need only apply a rule consistent with that opinion).

The Ohio Court of Appeals' decision also did not involve an unreasonable application of *Jackson* or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  The evidence the Ohio Court of Appeals cited above, and the trial evidence as a whole, were sufficient for a rational trier of fact to conclude that Bowen engaged in sexual conduct with his adopted daughter (sexual battery under Ohio Rev. Code § 2907.03(A)(5)), and that this sexual conduct was compelled through the use of force (rape under Ohio Rev. Code § 2907.02(A)(2)).  The victim testified that Bowen had sexual intercourse with her on five separate occasions when she was as

15

young as 15 years old.  One incident involved Bowen pushing her down, removing her clothes, and not stopping even though she asked him to stop multiple times.  ECF Doc. 6-6 at 121-26. Bowen argues that there is a lack of sufficient evidence to support his conviction because he denied the victim's allegations and there was no corroborating physical or forensic evidence. ECF Doc. 1 at 9-10.  But even if the jury relied solely on the victim's testimony, "this Court has long held that the testimony of the victim alone is constitutionally sufficient to sustain a conviction."  *Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (collecting cases).  Thus, no reasonable jurist could debate the state court's denial of this claim because they could not find that Bowen's conviction was beyond any possibility of fairminded disagreement.  *See Harrington*, 562 U.S. at 101.

I recommend that Bowen's Ground One claim be DENIED on the merits.

**B.     Ground Two – Manifest Weight of Evidence**

For his Ground Two claim, Bowen contends that his conviction was against the manifest weight of evidence and that the Ohio Court of Appeals' decision was unreasonable because: (i) the prosecuting witnesses were not credible (based on a history of false statements and bad behavior) and they had a reason to lie; and (ii) the alleged confession was problematic.  ECF Doc. 1 at 12-14.  Warden Watson responds that Bowen's Two claim should be dismissed as noncognizable because this manifest weight of evidence claim does not implicate any federal constitutional issues and only raises an issue of state law.  ECF Doc. 6 at 14.  Bowen replies that his manifest weight of evidence claim is rooted in the Constitution and "[t]his court cannot make credibility determination but arguably can make determinations under 28 U.S.C.A 2254 about whether the decision was reasonable."  ECF Doc. 8 at 10.

**1.     Cognizability**

Federal habeas relief is only available for *federal* constitutional violations.  28 U.S.C. § 2254(a).  Thus, "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").  A claim that alleges only errors of state law is cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process."  *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

An argument that a conviction was against the manifest weight of evidence is a state-law claim.  *See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *Schwarzman v. Gray*, No. 17-3859, 2018 U.S. App. LEXIS 27193 *8 (6th Cir. 2018) (unpublished) ("A manifest-weight-of-the-evidence claim in Ohio is a state law claim that is similar to but ultimately different from a federal constitutional claim that the evidence was insufficient to support a conviction.").  Because Bowen's manifest weight of evidence claim is a state law claim, it is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780.  As discussed above, Bowen's Ground One insufficiency-of-the-evidence claim fails on the merits.  Thus, even if the Ground Two manifest weight of evidence claim were construed to be a cognizable sufficiency-of-the-evidence claim, the claim would fail on the merits for the same reasons.

I recommend that Bowen's Ground Two claim be DISMISSED as noncognizable.

## IV.    Ground Three – Discovery Sanction to Exclude Evidence

For his Ground Three claim, Bowen contends that the trial court erred in barring the use of text messages from the victim during cross-examination, and that the Ohio Court of Appeals' decision to affirm was unreasonable, because: (i) the right to establish a defense is a fundamental

due process right; (ii) these text messages were being offered for the purpose of refreshing the recollection of the victim; and (iii) "[t]hese text messages would have provided a valid defense or at least called into question the prosecuting witnesses' testimony."  ECF Doc. 1 at 15-17.

Warden Watson responds that Bowen's claim is noncognizable to the extent it challenges the state court's evidentiary ruling because that is a state law issue, and he has failed to demonstrate that the exclusion of the text messages was fundamentally unfair.  ECF Doc. 6 at 21-23.  He further argues that Bowen's claim is meritless to the extent it asserts a violation of the right to present a meaningful defense or for a fundamentally fair trial because: (i) he failed to proffer the contents of the excluded test messages in state court or in his habeas petition; (ii) he has not shown that the Ohio Court of Appeals' decision was contrary to clearly established Supreme Court precedent; and (iii) any error from the exclusion of the text was harmless under the *Brecht*[2] standard.  *Id.* at 23-28.

### 1.    Applicable Law

The Constitution guarantees a criminal defendant "a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  However, this right is not unqualified, such that "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also Thompson v. Larose*, No. 19-4142, 2020 U.S. App. LEXIS 8802, at *4 (6th Cir. Mar. 19, 2020) ("The constitutional right to present a complete defense allows defendants a 'meaningful opportunity' to put forward a complete defense but 'not an unlimited right to ride roughshod over reasonable evidentiary restrictions.'" (quoting *Wynne v. Renico*, 606 F.3d 867, 870 (6th Cir. 2010)).  A defendant must "comply with established rules of procedure and evidence designed to

---

[2] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

The Sixth Circuit has held: "[A] proper inquiry into the constitutionality of a court's decision to exclude evidence begins with considering the relevancy and cumulative nature of the excluded evidence, and the extent to which it was 'central' or 'indispensable' to the defense. Against this courts must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based[.]" *Gagne v. Booker*, 596 F.3d 335, 341 (6th Cir. 2010). The Supreme Court has held that the Constitution provides trial judges with "wide latitude to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Crane*, 476 U.S. at 689 (internal quotations omitted) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). In order for a trial court's exclusion of evidence to violate a criminal defendant's right to present a complete defense, the exclusion must "infringe[] upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308. A "weighty interest of the accused" is infringed when "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315).

Even if a trial court violated a petitioner's right to a complete defense by excluding certain evidence, the error must still survive a harmless-error analysis on collateral review. *See, e.g.*, *Fleming v. Metrish*, 556 F.3d 520, 536-37 (6th Cir. 2009). The test for harmless error in federal habeas proceedings is whether the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (internal quotation marks omitted); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). The Supreme Court further clarified the contours of harmless error analysis within the context of federal habeas proceedings as follows:

19

The test for whether a federal constitutional error was harmless depends on the procedural posture of the case.  On direct appeal, the harmlessness standard is the one prescribed in *Chapman*, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  *Id.*, at 24, 87 S. Ct. 824.

In a collateral proceeding, the test is different.  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'"  *Brecht*, 507 U.S., at 637, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L.Ed.2d 814 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict'"  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S. Ct. 992, 130 L.Ed.2d 947 (1995).  There must be more than a "reasonable possibility" that the error was harmful. *Brecht, supra*, at 637, 113 S. Ct. 1710 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error." *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S. Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam).

*Davis v. Ayala*, 576 U.S. 57, 267-68 (2015).

The *Davis* Court further clarified that "the *Brecht* standard 'subsumes' the requirements that § 2254(d) imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless under *Chapman*." *Id.* at 268 (quoting *Fry*, 551 U.S. at 120).  Moreover, "[w]hile a federal habeas court need not 'formal[ly]' apply both *Brecht* and 'AEDPA/*Chapman*,' AEDPA nevertheless 'sets forth a precondition to the grant of habeas relief.'"  *Id.* (quoting *Fry*, 551 U.S. at 119-120).  Thus, "[w]hen a *Chapman* decision is reviewed under AEDPA, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Ayala*, 576 U.S. at 269 (quoting *Fry*, 551 U.S. at 119) (emphasis in original).  In other words, for petitioners to prevail they must demonstrate that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citing *Richter*, 562 U.S. at 102).

When determining if there is harmless error, if the court "is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' the error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  Grave doubt exists when "the matter is so evenly balanced that [the court] feels [it]self in virtual equipoise as to the harmlessness of the error."  *Id.* at 435.  Factors relevant to the harmless error analysis include: (i) "the importance of the witness' testimony in the prosecution's case;" (ii) "whether the testimony was cumulative;" (iii) "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points;" (iv) "the extent of cross-examination otherwise permitted;" and (v) "the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684.

### 2.    Merits

The Ohio Court of Appeals found no merit to Bowen's claim that the exclusion of the text messages violated his due process rights.  In overruling Bowen's third assignment of error, the court stated:

> {¶40}  At trial, during the cross-examination of the Child, defense counsel sought to introduce text messages, which were either to or from the Child's phone, for the purpose of refreshing her recollection.  The state objected to the introduction of the text message, indicating it had not received such in discovery.  Defense counsel explained she just recently obtained the text messages and did not know how the Child would testify.  The trial court would not allow defense counsel to use the text messages for any purpose.  Defense counsel noted her objection for the record.

> {¶41}  Assuming, arguendo, the trial court erred in excluding the text messages, we find any error to be harmless.  [Petitioner] failed to make a proffer of the nature of text messages.  Without such a proffer, this Court cannot find [Petitioner] was prejudiced by the exclusion of the evidence.

*Id.* at 97-99.

Applying the AEDPA standard, I do not find the Ohio Court of Appeals' decision to have been unreasonable.  *Ayala*, 576 U.S. at 269.  Bowen has a very high burden to meet, for the

remedy of habeas corpus is solely meant to "guard against extreme malfunctions in the state criminal justice systems."  *See Richter*, 562 U.S. at 102.  On direct appeal, and in his habeas petition, Bowen has not proffered what information was contained in the text messages from the victim.  *See* ECF Doc. 6-1 at 43-45; ECF Doc. 1 at 15-17; ECF Doc. 8 at 10.  Applying the required deferential standard, I cannot find that no reasonable jurist could conclude that the exclusion of the text messages evidence – which was to be used for the purpose of refreshing the victim's recollection – was not harmless beyond a reasonable doubt, particularly when Bowen has provided no specific argument or details to support his claim.

Bowen's claim also does not survive the *Brecht* standard of review.  For reasons explained above, there was sufficient evidence to support Bowen's conviction.  Moreover, as stated by Bowen, the text messages were not to be used for substantive evidence but merely to refresh the victim's recollection.  ECF Doc. 1 at 15-17; ECF Doc. 8 at 10; *see also* ECF Doc. 6-6 at 174.  Under these circumstances, the undersigned harbors no doubts, let alone *grave* doubts, about whether the exclusion of the text messages in this case had a substantial and injurious effect on the verdict – it did not.  Thus, even applying the *Brecht* standard of review, Bowen's Ground Three claim would be considered harmless and therefore meritless.

I recommend that Bowen's Ground Three claim be DENIED as meritless.

## V.      Ground Four – CVSA Evidence

For his Ground Four claim, Bowen argues that the Ohio Court of Appeals' decision on the issue of allowing the discussion of CVSA test was unreasonable because the discussion of polygraphs is not permitted in Ohio courts and "[w]hile there was no contemporaneous objection, it was incumbent on the [trial] court to raise the issue."  ECF Doc. 1 at 17-20.  Warden Watson responds that Bowen's Ground Four claim is procedurally defaulted under Ohio's contemporaneous objection rule because Bowen failed to bring the error to the attention of the

22

trial court, and he has cannot overcome this default by a showing of actual innocence or cause for the delay. ECF Doc. 6 at 28-30. Warden Watson further argues that the claim is: (i) noncognizable because the admission of evidence is a state law issue; and (ii) otherwise meritless because the detective only testified about his opinion of and use of CVSA tests in general and he did not testify about Bowen with relation to such tests. *Id.* at 30-31.

In his traverse, Bowen concedes that he did not object to the mention of the CVSA test during the trial, but he argues that: (i) polygraph test results are inadmissible under Ohio law; (ii) the trial court abdicated its role as gatekeeper; and (iii) the mention of the CVSA test violated his Constitutional rights. ECF Doc. 8 at 11-12.

### 1.      Law on Procedural Default

The procedural default doctrine precludes federal review if the petitioner has failed to follow the state's procedural requirements for presenting his claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, we cannot consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is independent of the federal question and is adequate to support the judgement." *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (internal quotation marks omitted).

The Sixth Circuit has prescribed a four-part test to decide whether a petitioner has procedurally defaulted his claim. A petitioner procedurally defaults a claim if: (i) the petitioner has failed to comply with a state procedural rule; (ii) the state courts enforced the rule; (iii) the state procedural rule is an adequate and independent state law ground for denying review of a

federal constitutional claim; and (iv) the petitioner cannot show cause and prejudice to excuse the default.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Bowen's Ground Four claim is procedurally defaulted.  Ohio law requires a contemporaneous objection to an alleged trial court error in order to preserve the issue for direct appeal.  *State v. Glaros*, 170 Ohio St. 471, 475, 166 N.E.2d 379 (Ohio 1960); *see Hyams v. Cleveland Clinic Found.*, 2012-Ohio-3945, 976 N.E. 2d 297, 304 (Ohio Ct. App. 2012).  Bowen did not object to the discussion of the CVSA test during the trial and thereby failed to comply with the contemporaneous objection rule.  The Ohio Court of Appeals enforced the contemporaneous objection rule against Bowen by only reviewing the CVSA claim for plain error on direct appeal.  ECF Doc. 6-1 at 99-101; *see Fleming v. Metrish*, 556 F.3d 520, 539 (6th Cir. 2009) ("In the habeas context, this Court does not construe a state court's plain-error review as negating the determination that a claim has been procedurally defaulted."); *see also Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("Moreover, we view a state appellate court's review for plain error as the enforcement of a procedural default.").  The Sixth Circuit has held that Ohio's contemporaneous objection rule is an adequate and independent ground for denying review of a federal constitutional claim. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012); *Hinkle*, 271 F.3d at 244.  Thus, Bowen's Ground One claim is procedurally defaulted. *See Lovins*, 712 F.3d at 295.

### 2.  Overcoming Default

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves.  A petitioner can obtain review of procedurally defaulted claims if he shows: (1) "cause," *i.e.,* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.*, that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the

24

alleged constitutional violation hadn't occurred.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012).  A petitioner can also obtain review of a procedurally defaulted claim to prevent a fundamental miscarriage of justice, when he presents new evidence that he was factually innocent of the crime of conviction.  *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."); *Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency."); *Schlup v. Delo*, 513 U.S. 298, 324 (1995) (An actual innocence claim must be supported by "new reliable evidence . . . that was not presented at trial.").

Thus, Bowen must show cause and prejudice for the default of his claim or provide new evidence of his actual innocence to overcome this procedural default.  Bowen has not argued or otherwise demonstrated cause to excuse the procedural default of his claim, nor has he argued or demonstrated through newly submitted evidence that he is actually innocent.

Because Bowen's Ground Three claim is procedurally defaulted and he has not established an exception to overcome this default, I recommend that Bowen's Ground Three claim be DISMISSED as procedurally defaulted.

### 3.    Cognizability

Even if Bowen's Ground Four claim was not procedurally defaulted, I would recommend that the claim be dismissed as noncognizable.  On direct appeal before the Ohio Court of Appeals, and in the instant habeas petition, the instant claim has been based on Bowen's assertion that the trial court erred when it allowed the discussion of the CVSA test during the trial, because it was a violation of Ohio law and therefore rendered the entire trial process

fundamentally unfair.  ECF Doc. 6-1 at 45-50; ECF Doc. 1 at 17-20.  Bowen's claim is not a cognizable on federal habeas review because it rises and falls entirely on whether there was a violation of state evidentiary law.  "Errors in application of state law, especially with regard to the admissibility of the evidence, are usually not cognizable in federal habeas corpus."  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003) (quoting *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)), and citing *Coleman*, 244 F.3d at 542 ("Because this is an appeal from a habeas corpus decision and not an appeal from Coleman's state conviction, we do not pass upon 'errors in the application of state law, especially rulings regarding the admission or exclusion of evidence.'"); *see also Estelle*, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Under Ohio law, trial courts enjoy broad discretion regarding the admissibility of evidence, which is reviewed for abuse of discretion.  *State v. Issa*, 93 Ohio St.3d 49, 64, 2001 Ohio 1290, 752 N.E.2d 904 (Ohio 2001).  And a trial court's discretionary decision is generally a state-law issue that is not cognizable on federal habeas review.  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) ("[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation.").

However, petitioners may be able to state a cognizable claim arising from an evidentiary ruling if they can demonstrate that the state court's decision offended some principle so firmly rooted in the traditions and conscience of our system of justice that its violation made the proceeding "fundamentally unfair."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Dillon v. Warden, Ross Corr. Inst.*, 541 F. App'x 599, 605 (6th Cir. 2013) (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).  Put another way, the petitioner asserts a cognizable claim when the state-court ruling undermined the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling*,

493 U.S. 342, 352 (1990) (internal citations omitted). "The Supreme Court has defined very narrowly the category of infractions that violates fundamental fairness." *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (citing *Dowling*, 493 U.S. at 352).

Bowen argues, in a conclusory manner, that his claim is a cognizable on federal habeas review because the discussion of the CVSA test violated his Constitutional rights. ECF Doc. 8 at 11-12. Other than citing Ohio caselaw for the proposition that polygraph evidence is inadmissible under state law, he has not cited any authority the supports the proposition that the admission of the evidence in this instance rendered his trial fundamentally unfair. ECF Doc. 1 at 17-20; EF Doc. 8 at 11-12. More importantly, Bowen has not argued nor otherwise demonstrated that the trial court's failure to bar discussion of the CVSA test fit within the narrow list of circumstances which the Supreme Court has determined undermine "fundamental conceptions of justice" and render a trial fundamentally unfair. *See Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352. This is especially true when the issue of the CVSA test was initially raised by defense counsel, objected to by the prosecution, and revisited by defense counsel on several occasions. And there was never any discussion of Bowen having been offered a CVSA test or of any CVSA test results. ECF Doc. 6-6 at 206-08, 268, 187. The Ohio Court of Appeals summarized the relevant facts as follows:

> {¶45} During her cross-examination of Det. Henry, defense counsel asked the detective if he had offered [Petitioner] an opportunity to take a CVSA or lie detector test to "confirm his confession." Tr. at 206. Det. Henry responded he would have offered the test if [Petitioner] had not confessed. The detective would not concede the test would be a tool to further verify or support [Petitioner's] confession. Det. Henry explained he does "believe in them" and will only offer the test as a chance to conduct a second interview.

> {¶46} We find [Petitioner] opened the door to this line of questioning and [Petitioner] has failed to establish the alleged plain error affected the outcome of the trial. Det. Henry stated he did not believe in CVSA's or polygraphs, and utilized them only as a means to a second interview with an accused. The detective's

> testimony neither incriminated nor cleared [Petitioner].  Accordingly, we find no
> error, plain or otherwise.

*Id.* at 101.  Accordingly, Bowen's Ground Four claim does not allege, nor does the record

establish, a denial of fundamental fairness sufficient to convert his noncognizable state-law claim

into a cognizable due process claim.  *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*,

493 U.S. at 352.

Even if Bowen's Ground Four claim were not procedurally defaulted, I would

recommend that this claim be DISMISSED as noncognizable.

### B.        Ground Five – Use of Allegedly Involuntary Confession

For his Ground Five claim, Bowen argues that his due process rights were violated when

the trial court allowed the introduction of an involuntary confession.  ECF Doc. 1 at 20-22.

Warden Watson responds that Bowen raised his Ground Five claim for the first time in state

post-conviction proceedings and the state court determined that the claim was procedurally

barred by the doctrine of *res judicata*, because the issue could have been raised on direct appeal.

ECF Doc. 6 at 32-33.  He argues that the claim is therefore procedurally defaulted, and that

Bowen cannot show cause or actual innocence to excuse the default.  *Id.* at 33-34.  Alternatively,

Warden Watson argues that Bowen's claim fails on the merits because the circumstances of the

case demonstrate that Bowen's confession was voluntary.  *Id.* at 34-38.  Bowen replies that

doctrine *res judicata* does not bar this claim.  *Id.* at 12-14.  He further states:

> The court should have reached the merits on the confession issue. It was not
> obstructed by *res judicata*. It is clear this statement was not a confession at all and
> contains no corroboration or follow up by the police. It is a detective bullying a
> bullied suspect into telling him what he wanted to hear. When he heard what was
> close enough, he stopped interviewing the suspect.

*Id.* at 18.

### 1.        Procedural Default

28

As discussed above, a habeas claim can be procedurally defaulted when the state courts have declined to review a particular claim on the merits because of a petitioner's failure to comply with a state procedural rule.  *Lovins*, 712 F.3d at 295.  This occurs when: (i) the petitioner failed to comply with an applicable state procedural rule; (ii) the state court actually enforced the rule; (iii) the rule constituted an "adequate and independent state ground" for denial which does not implicate federal law; and (iv) the petitioner cannot overcome his procedural default by showing cause and prejudice.  *Coleman v. Mitchell*, 268 F.3d 417, 427 (6th Cir. 2001).

Ohio's *res judicata* rule is an adequate and independent state ground that forecloses federal habeas review. *Hand v. Houk*, 871 F.3d 390, 409 (6th Cir. 2017) (citing *Hanna v. Ishee*, 694 F.3d 596, 614 (6th Cir. 2012)); *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002) (collecting cases).  Under Ohio's doctrine of *res judicata*:

> a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.

*State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104, 108 (Ohio 1967).  Only claims involving evidence outside the trial record may be raised for the first time in a petition for state post-conviction relief. *See State v. Cole*, 2 Ohio St. 3d 112, 2 Ohio B. 661, 443 N.E.2d 169, 171 (Ohio 1982) ("Generally, the introduction in [a state post-conviction] petition of evidence *dehors* the record . . . is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of *res judicata*.").

Here, it is undisputed that Bowen raised the instant claim for the first time in his state petition for post-conviction relief, after not having raised it on direct appeal.  ECF Doc. 1 at 2-21; ECF Doc. 6 at 32-34; ECF Doc. 8 at 12-14.  In its ruling on the post-conviction petition, the trial court held, and the Ohio Court of Appeals affirmed, that Bowen's involuntary

confession claim was barred by *res judicata* because issues concerning the voluntariness of his

confession *could have been raised* on direct appeal, but were not.  ECF Doc. 6-1 at 244-45, 295.

In his traverse, Bowen appears to argue that the Ohio courts incorrectly applied the *res judicata*

doctrine, but he focused his argument on the bias of the trial court with regards to his withdrawn

motion to suppress the confession – an issue that was raised during post-conviction proceedings

but entirely omitted in his habeas petition.  *See* ECF Doc. 6-1 at 158-60; ECF Doc. 1 at 7-22;

ECF Doc. 8 at 12-14.  In his post-conviction proceedings, Bowen cited no evidence from outside

the record that went to the merits of whether his confession was voluntary; rather, the evidence

he presented was contained within the record.  He simply did not demonstrate that he could not

have pursued such a claim on direct appeal.[3]  This is in contrast to *Jones v. Bradshaw*, 46 F.4th

459, 485-86 (6th Cir. 2022), in which the Sixth Circuit determined that it was appropriate to

disturb a state court's *res judicata* ruling when the petitioner had demonstrated "that his state

post-conviction petition contained new, not-previously-available evidence, and the Ohio Court of

Appeals erroneously rejected that evidence."  Bowen has not made the same showing.

As discussed above, Bowen has not argued or otherwise demonstrated cause to excuse

the procedural default of his involuntary confession claim, nor has he argued or demonstrated

that he is actually innocent.  Accordingly, because the Ohio courts correctly applied the doctrine

of *res judicata* and Bowen has not established an exception for this default, I recommend that

Bowen's Ground Five claim be DISMISSED as procedurally defaulted.

## VI.    Certificate of Appealability

---

[3] The affidavit from Bowen's mother, attached to his petition for post-conviction relief, was not the type of evidence which would have triggered de novo review of the merits in the consideration of the post-conviction petition, because it merely supplemented arguments that Bowen made or could have made on direct appeal.  *See, e.g.*, *Hand*, 871 F.3d at 409.

In light of the requirement that the Court either grant or deny a certificate of appealability at the time of its adverse ruling on a habeas petition, I include a recommendation regarding whether a certificate of appealability should be issued in Bowen's case.  Rule 11(a), 28 U.S.C. foll. § 2254.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a certificate of appealability ("COA") for an issue raised in a §2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right.  *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020).  A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

If the Court accepts my recommendations, Bowen will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  Bowen's Ground One is meritless and his Ground Two is noncognizable and likewise meritless.  His Ground Three partially noncognizable and otherwise meritless.  Both his Ground Four and Ground Five claims are procedurally defaulted and alternatively meritless.  Because jurists of reason would not find these conclusions to be debatable, I recommend that no COA issue in this case.

**VII.    Recommendations**

I recommend that Bowen's petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and that his claims be resolved in the following manner: (i) Ground One be DENIED as meritless; (ii) Ground Two be DISMISSED as procedurally defaulted; (iii) Ground Three be DENIED as meritless; (iv) Ground Four be DISMISSED as procedurally defaulted and/or noncognizable; and (iv) Ground Five be DISMISSED as procedurally defaulted. I further recommend that Bowen not be granted a COA.

Dated: November 28, 2023

Thomas M. Parker
United States Magistrate Judge

_____

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).